**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-31115 ME |
| THOMAS GERARD MARTINO, ) | |
| ) | Chapter 7 |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |
| FIA CARD SERVICES, N.A. (fka MBNA ) | Adversary No. 11-1953 MER |
| AMERICA BANK, N.A.), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THOMAS GERARD MARTINO, ) | |
| ) | |
| ) | Signed/Docketed |
| Defendant. ) | March 28, 2013 |

**ORDER**

The Debtor in this case, Thomas Martino ("Martino"), filed his Chapter 7 case on September 2, 2011 ("Petition Date"). This adversary proceeding involves the dischargeability of a consumer debt arising from the use of two credit cards, a MasterCard and a Visa, issued by the Plaintiff FIA Card Services ("FIA"). Based on its consideration of the evidence and legal argument, the Court makes the following findings of fact and conclusions of law.

**JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it concerns the dischargeability of a particular debt.

**BACKGROUND FACTS**

Martino had the two subject credit card accounts with FIA for several years before his bankruptcy filing. According to FIA, Martino deliberately and with knowledge of his impending bankruptcy incurred $13,049.00 of debt on the subject accounts ($4,757 in the account ending 1177, and $8,292 in the account

ending 1555),[1] including luxury items such as vacations and meals at expensive restaurants. FIA argues the amounts owing on the accounts are nondischargeable under both 11 U.S.C. § 523(a)(2)(A) and(a)(2)(C).[2]

Martino does not dispute he incurred expenses on the accounts shortly before the bankruptcy for items including family trips to New York and Grand Cayman and the use of his helicopter. However he denies the debt is nondischargeable, and claims he intended to pay the debts on the cards at the time they were incurred. Martino also raises the following affirmative defenses: 1) failure to state a claim under Rule 12(b)(6); 2) waiver, estoppel, or laches; 3) frivolous and groundless claim; 4) lack of requisite intent; and 5) statute of limitations. Martino asserts a counterclaim seeking attorneys' fees and costs under § 523(d), arguing FIA's claims are not substantially justified. FIA contends the counterclaim must fail because: 1) it does not state a claim upon which relief may be granted; and 2) § 523(d) does not provide a private cause of action, and should be made by motion and not a counterclaim.

Martino and his wife Holly were authorized users of the credit accounts, and used the cards for their living expenses, generally charging about $10,000 per month. Martino testified he made regular payments on the cards for many years, has a high income, and had every intent of repaying the disputed charges at the time they were incurred. He stated the balances were fairly low on both cards as of the Petition Date. However, FIA refused to accept any payments from Martino's wife, or to transfer the accounts to her name, and instead closed the accounts and brought the within action.

## DISCUSSION

Exceptions to discharge are to be narrowly construed and any doubts must be resolved in the debtor's favor.[3] However, a balance must be struck in weighing the evidence because "[t]oo narrow a construction to the exceptions listed in Section 523(a), and particularly the fraud exception, could run the risk of absolving a dishonest debtor of his fraudulently obtained debt. On the other

---

[1] For privacy protection purposes, only the last four numbers of these accounts are identified.

[2] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

[3] See Bellco First Federal Credit Unions v. Kaspar (In re Kaspar), 125 F.3d 1358, 1361 (10th Cir. 1997).

hand, too broad a reading of the discharge exceptions could place such an onerous burden on a debtor as to deprive him of his chance at a fresh start."[4]

Section 523(a)(2) of the Bankruptcy Code states in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> . . .
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. . .
>>>
>>> (C)(i) for purposes of subparagraph (A)—
>>>
>>>> (I) consumer debts owed to a single creditor and aggregating more than $600 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable. . .[5]

### A.   Presumption of Nondischargeability Under § 523(a)(2)(C)

Under this subsection, Congress reduced the evidentiary burden on credit card issuers by providing a presumption of nondischargeability. "Congress' motive for adding § 523(a)(2)(C) to the Bankruptcy Code in 1984 was to rectify a perceived practice by debtors of 'loading up,' or going on credit buying sprees in contemplation of bankruptcy."[6]  A credit card issuer's burden under

---

[4] *First National Bank of Omaha v. Manriquez (In re Manriquez)*, 2009 WL 3015161, at *5 (D. Colo. 2009) (Not Reported in F.Supp.2d).

[5] 11 U.S.C. § 523(a)(2)(A) and (C)(I).

[6] *GE Money Bank v. Youssef (In re Youssef)*, 2007 WL 2363286 at *4 (Bankr. D. Kan. Aug. 14, 2007) (Not Reported in B.R.); *see also FCC Nat'l Bank v. Orecchio (In re Orecchio)*, 109 B.R. 285, 289 (Bankr. S.D. Ohio 1989) (citing S.Rep. No. 98-65, 98th Cong. 1st Sess. 58 (1983)).

§ 523(a)(2)(C) is first to demonstrate the nondischargeability section applies to its claim.[7] If the credit card issuer meets this burden, it becomes the debtor's burden to rebut the presumption:

> To rebut the presumption of fraudulent intent, the debtor therefore must directly attack the presumed fact and raise substantial doubt in the mind of the trier of fact as to the existence of the presumed intent. The presumption can therefore be rebutted by evidence that the portion of such claim was not incurred in contemplation of his discharge in bankruptcy. One commentator states, the presumption can be overcome by evidence that the debtor experienced a sudden change in circumstances or that the debtor did not contemplate filing a bankruptcy petition until after the transaction took place. However, the evidence needed to rebut the presumption need not rise to the same level of evidence needed for a creditor to establish nondischargeability under § 523(a)(2)(A), as the presumption does not ever shift to the debtor the ultimate burden to establish the absence of fraudulent intent. The burden of persuasion remains on the creditor.[8]

Thus, in order to be entitled to the presumption of non-dischargeability under § 523(a)(2)(C), FIA must show Martino incurred consumer debts aggregating more than $600 for luxury goods, within ninety days before the Petition Date. Martino may overcome this presumption by showing he experienced a change in his situation, was not contemplating seeking bankruptcy relief at the time the charges were incurred, or had a sincere intent to pay for what he received on credit at the time of the transactions.[9]

The Bankruptcy Code does not specifically define the term "luxury goods or services." However, it does indicate this term "does not include goods or services reasonably necessary for the support or maintenance of the debtor or a

---

[7] *Youssef*, 2007 WL 2363286 at *4.

[8] *Id.* (internal quotations and citations omitted).

[9] *FIA Card Services v. Lee (In re Lee)*, 450 B.R. 231, 234 (Bankr. N.D. Ga. 2011) (citing *Sears, Roebuck & Co. v. Green (In re Green)*, 296 B.R. 173, 179–80 (Bankr. C.D. Ill. 2003); *see also Nationwide Nw. Ltd. P'ship v. Andersen (In re Andersen)*, 2007 WL 2848405 (Bankr. W.D. Wash. Mar.8, 2007) (Not Reported in B.R.); *cf. Citibank (S.D.), N.A. v. Kim (In re Young Song Kim)*, 2005 WL 6488989 (Bankr. N.D. Ga. Mar. 14, 2005) (Not Reported in B.R.); *accord Citibank (SD.), N.A. v. Spradley (In re Spradley)*, 313 B.R. 119, 128 (Bankr. E.D. N.Y. 2004)). *See also US Bank v. Pugh (In re Pugh)*, 356 B.R. 528, 530-31 (Bankr. D. Colo. 2006).

dependent of the debtor."[10] Luxury goods or services are generally "limited to things that constitute extravagances or self-indulgences."[11]

Here, Martino agreed he incurred purchases for items which fall within the "luxury goods" definition. In particular, he admitted the vacation and helicopter expenses fall into this catagory. Therefore, under § 523(a)(2)(C)(ii)(II), the Court finds the debts in question are in part, luxury goods, falling under the presumption of non-dischargeability. The question then becomes whether Martino's assertion of his intent to pay this credit card debt in the ordinary course of his monthly expenses, combined with his assertion he had the ability to do so, successfully rebuts the presumption.

The Martinos both testified they used the two accounts for nearly all of their living expenses each month, and often accumulated monthly account balances of $10,000 on each credit card.[12] In addition, Martino pointed out the credit accounts were generally paid in full each month, with only occasional balances remaining after partial payments. Martino further testified that any unpaid carry-over balances were satisfied in full during the next billing period. Further, Martino's bankruptcy schedules listed exempt assets in the approximate amount of $684,113.22 and monthly net income of $89,860.16.[13] FIA does not dispute these figures. Thus, Martino had the ability to pay the charges.

The key issue is the intent to pay. The testimony at trial weighs in favor of Martino. Perhaps the best indicator of Martino's intent to pay is demonstrated by his two payments made relatively close to his Petition Date (July 25, 2011 payment on account #1555 in the amount of $4,582.31[14] and August 25, 2011 payment on account #1177 in the amount of $12,439.31, essentially paying off any balance owing on that card[15]). In addition, the Martinos testified about their attempts to keep making payments on the cards and/or to transfer the cards to Holly Martino, individually. The Court finds the Martinos to be credible witnesses with respect to their intent to pay the credit card bills, and these facts rebut the presumption under § 523(a)(2)(C).

---

[10] § 523(a)(2)(C)(ii)(II); see also Youssef, 2007 WL 2363286 at *5.

[11] *Id.*

[12] *See* FIA's Exhibits 1 and 2, and Martino's Exhibits B, C, and D.

[13] *See* Martino's Schedule C and Schedules I and J.

[14] FIA's Exhibit 1, Martino's Exhibit B.

[15] FIA's Exhibit 2, Martino's Exhibit B.

In addition, Martino's history, over a period of years, of using the cards for a variety of monthly expenses, including travel and entertainment, and paying all or most of the balance each month, further rebuts the § 523(a)(2)(C) presumption.[16] Martino also indicated he did not make his final decision to file his bankruptcy petition until just prior to the Petition Date, as he was trying to avoid filing bankruptcy through out-of-court workouts and refinancing.

For these reasons, the Court finds Martino has rebutted the presumption set forth in § 523(a)(2)(C), and any debts asserted by FIA to be under the presumption shall not be excluded from discharge on that basis. Accordingly, the Court turns to whether FIA's debts are nondischargeable under the more general provisions of § 523(a)(2)(A).

## B. Dischargeability Under § 523(a)(2)(A)

To prove a debt nondischargeable under § 523(a)(2)(A) for false pretenses, false representation, or actual fraud, a creditor must show the following four elements: "[t]he debtor made a false representation; the debtor made the representation with the intent to deceive the creditor; the creditor relied on the representation; the creditor's reliance was [justifiable]; and the debtor's representation caused the creditor to sustain a loss."[17] FIA must meet each of the elements under § 523(a)(2)(A). To obtain a finding of nondischargeabilty, FIA bears the burden of proving each element by a preponderance of the evidence.[18] For the reasons stated below, the Court finds

---

[16] *See, e.g., Chase Bank USA, N.S. v. Ritter (In re Ritter)*, 404 B.R. 811, 827 (Bankr. E.D. Pa. 2009) (holding a debtor's payment history and stable employment proved by a preponderance of the evidence she did not incur debts subject to § 523(a)(2)(C) with an intention to discharge the debt in bankruptcy, thus rebutting the presumption).

[17] *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 789 (10th Cir. 2010) (internal quotation marks omitted) (quoting *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996)). *See also United States v. Turner (In re Turner)*, 179 B.R. 273, 278 (Bankr. D. Colo. 1995). The *Riebesell* Court went on to cite the Supreme Court's opinion in *Field v. Mans* to clarify the proper standard for the fourth element was "justifiable reliance," not "reasonable reliance":

> The fourth element of the § 523(a)(2)(A) test requires the creditor's reliance to be "reasonable." The appropriate standard is not "reasonableness" in the sense of whether an objectively reasonable person would have relied upon the debtor's false representations. Rather, the inquiry is whether the actual creditor's reliance was "justifiable" from a subjective standpoint.

*Id.* at 791-792 (citing *Field v. Mans*, 516 U.S. 59, 74-75 (1995)).

[18] *Grogan v. Garner*, 498 U.S. 279, 286 (1991); *Young, supra*, at 1373; *Snyder v. Schlesselman (In re Snyder)*, 421 B.R. 602, at *2 (10th Cir. BAP 2009) (table).

FIA has not met its burden of proof with respect to the first and second elements, and therefore the Court need not address the third and fourth elements.

### 1. False Representation

As to the first element, the Bankruptcy Appellate Panel for the Tenth Circuit has determined the use of a credit card by a debtor gives rise to the implied representation the debtor intends to repay the charged amounts. However, such use does not give rise to an implied representation regarding the debtor's ability to pay.[19]

Accordingly, each time Martino used the credit cards, he made an implied representation of his intent to repay FIA. By filing a bankruptcy petition, Martino created an estate under the control of a bankruptcy trustee, which changed Martino's ability to continue making payments in his pre-bankruptcy manner.[20]

As noted above, the Martinos' evidence, and FIA's own records, show they had a habit of paying the accounts regularly and on time. In addition, based on Martino's monthly income from his employment, he believed he had the means to continue such payments. Therefore, any implied representation of intent to repay the charged amounts was not false, but true. Accordingly, the first element is not satisfied.

### 2. Intent to Deceive

This element requires the Court to determine whether Martino possessed the requisite fraudulent intent to deceive FIA. In determining whether a debtor intended to deceive a creditor, the following nonexclusive factors may be helpful:

---

[19] *Chevy Chase Bank v. Kukuk (In re Kukuk)*, 225 B.R. 778, 785-86 (10th Cir. BAP 1998). The Bankruptcy Court for the District of New Mexico has observed under *Kukuk*, a credit card issuer bringing a § 523(a)(2)(A) claim has "a very difficult burden" to prove that the debtor did not intend to repay the debts incurred. *In re Kuo Chuan Wang*, 2012 WL 4739310, at *4 (Bankr. D.N.M. Oct. 3, 2012) (slip copy) (quoting *Kukuk* at 788).

[20] FIA asserts it did not accept payments following the Petition Date because it did not wish to violate the automatic stay. In addition, the Court notes it may have been unwise for Martino to attempt to move the accounts to the possession of his non-debtor spouse, given the presence of the stay and the Chapter 7 trustee's interest in administering the estate and making distributions to creditors. However, these issues are irrelevant to the question of whether Martino made false representations as to his intent to repay FIA, so as to render the charges nondischargeable under § 523(a)(2)(A).

> (1) the length of time between the charges made and the filing of bankruptcy; (2) whether the debtor consulted an attorney regarding bankruptcy prior to the charges being made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on any given day; (8) whether or not the debtor was employed; (9) the debtor's employment prospects; (10) the debtor's financial sophistication; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases were made for luxuries or necessities.[21]

A debtor's intent must be inferred by the totality of the circumstances of the individual case as no one factor will be determinative.[22] Using these factors as a guide to evaluating the totality of the circumstances in this case, the Court finds the following factors to support a conclusion Martino lacked the requisite fraudulent intent:

- Martino's financial condition, while seriously affected by business debt, was stable as to his monthly consumer spending. Martino used the credit cards in question for consumer bills. Specifically, Martino's Schedule I indicates household income of $113,633.16 per month, while his Schedule J shows average monthly expenses of $23,773.00, resulting in monthly net income of $89,860.00. In addition, as noted above with respect to the § 523(a)(2)(C) discussion, the Court finds Martino demonstrated his ability and intent to pay.[23]

- Martino acknowledged he did not list debts to FIA on his schedules. However, he stated he believed the accounts to be current and he wished to keep using and paying the credit cards as he had in the past. Further, Martino did not dispute he spoke with his bankruptcy attorney prior to incurring the charges and obtained his credit counseling certification prior to incurring charges. He knew bankruptcy was a possibility, and wanted to be prepared if it became necessary. But he also indicated he conferred often with his bankruptcy attorney because counsel was trying to structure workouts to avoid a bankruptcy filing.

---

[21] *Kukuk* at 786.

[22] *Id.* at 787.

[23] FIA's Exhibit 2, Martino's Exhibit B.

- Martino's charges on the credit cards were not shown to be above the credit limits. Account #1555 shows a credit limit of $60,000, and account #1177 shows a credit limit of $20,000.[24] None of the monthly combined charges were equal to or above these amounts, and most were significantly lower.

- Martino also demonstrated he is employed as a broadcaster and media personality, and continues to be so employed.

- There was no sudden change in Martino's habits. Martino and his spouse testified they used the credit cards to meet their day-to-day living expenses, and often incurred charges exceeding $10,000 per month. The credit card statements admitted at trial corroborate such testimony.

Therefore, based on the totality of the circumstances, the Court finds Martino lacked the requisite fraudulent intent necessary to meet the intent element under § 523(a)(2)(A).

Because FIA must meet each of the elements under § 523(a)(2)(A), which it has not done, the Court finds it is unnecessary to address the remaining fraud elements. Thus, FIA's claim for relief under § 523(a)(2)(A) must be denied.

**C. Martino's Counterclaim for Attorneys Fees Under § 523(d)**

Section 523(d) provides:

> If a creditor requests a determination of dischargeability of a consumer debt under [§ 523(a)(2)], and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

The Bankruptcy Appellate Panel for the Tenth Circuit has recently explained:

> This Court has held that, to determine whether substantial justification exists for bringing a complaint for purposes of § 523(d), a court should consider whether the plaintiff has shown "a reasonable basis for the facts asserted; a reasonable basis in the law for the legal

---

[24] FIA's Exhibits 1 and 2, Martino's Exhibit B.

theory proposed; and support for the legal theory by the facts alleged." *Commercial Fed. Bank v. Pappan (In re Pappan)*, 334 B.R. 678, 683 (10th Cir. BAP 2005) (quoting *Harris v. R.R. Ret. Bd.*, 990 F.2d 519, 520–21 (10th Cir. 1993)). Bankruptcy courts in this circuit also have noted: "The determination of substantial justification is largely one of fact which requires proof of elements such as what the party did prior to making the complaint to investigate and substantiate the allegations, and what proof it has to establish the elements essential for it to prevail[.]" *Bank of N.Y. v. Le ( In re Le)*, 222 B.R. 366, 369 (Bankr. W.D. Okla. 1998). *See also Citizens Nat'l Bank v. Burns (In re Burns)*, 77 B.R. 822, 823–24 (D. Colo. 1987), *aff'd*, 894 F.2d 361 (10th Cir. 1990) (acknowledging that many courts find it necessary to find that no significant element of the creditor's claim has been established before awarding fees under § 523(d)) (citations omitted). In *First Card v. Leonard (In re Leonard)*, 158 B.R. 839 (Bankr. D. Colo. 1993), the court awarded fees to the debtor, but in that case, no discovery was undertaken prior to filing the complaint *or prior to going to trial*.[25]

In the case at bar, Martino's uncommon circumstance of incurring high balances on a monthly basis, rather than the more modest amounts seen in a more typical consumer case, led to the appearance of a possible § 523(a)(2) claim. Likewise, the Court finds FIA's explanation for refusal to accept payments post-petition reasonable on the unique facts of this case. That is, FIA did not want to accept a payment which could be construed as a violation of the automatic stay. Thus, while Martino successfully rebutted the dischargeability allegations brought against him, the Court finds there was an arguable basis in law and fact for the bringing of the action.

For these reasons, the Court finds FIA's position was justified, although ultimately not successful. Therefore, the Counterclaim seeking fees and costs under § 523(d) will be dismissed.

---

[25] *Adamar of New Jersey, Inc. v. Innerbichler (In re Innerbichler)*, 2013 WL 659078, at *7 (10th Cir. BAP Feb. 25, 2013) (unpublished decision)(emphasis in original).

## CONCLUSION[26]

Based upon the above findings and conclusions,

IT IS HEREBY ORDERED prepetition debts owed by Martino to FIA are found to be dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (C), and FIA's claims under those sections are hereby dismissed.

IT IS FURTHER ORDERED Martino is not entitled to attorneys' fees and costs under 11 U.S.C. § 523(d), and his Counterclaim under that section is dismissed.

Dated March 28, 2013                    BY THE COURT:

                                        Michael E. Romero
                                        United States Bankruptcy Judge

---

[26] The Court has reviewed the Plaintiff FIA Card Services' Supplemental Trial Brief dated March 28, 2013, and has determined the points expressed therein do not change the findings expressed in this Order.